William **LEWIS**, Plaintiff,

v.

**ACB BUSINESS SERVICES, INC., Defendant.**

**Nos. C-3-94-233, C-1-95-222.**

United States District Court, S.D. Ohio, Western Division.

Jan. 11, 1996.

292

Jason D. Fregeau, Yellow Springs, OH, for plaintiff.

James P. Connors, Columbus, Ohio, for defendant.

## DECISION AND ORDER FOR JUDGMENT IN CASE NO. C–3–94–233

MERZ, United States Magistrate Judge.

These cases arise out of Plaintiff William Lewis's credit relationship with American Express. In Case No. C–3–94–233, the lead case above-captioned, Mr. Lewis claimed violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and the Ohio Consumer Sales Practices Act, Ohio Revised Code Ch. 1345.

The lead case came on for trial to the Court, sitting with a jury of seven, on January 9–10, 1996, with the undersigned presiding.[1] At the conclusion of the Plaintiff's case, the Court granted in part and denied in part Defendant's oral motion for judgment as a matter of law under Fed.R.Civ.P. 50. At the conclusion of all the evidence, the Court denied Plaintiff's oral motion for judgment as a matter of law and granted Defendant's cross-motion under the same rule. The following memorandum summarizes and supplements the Court's oral rulings on those three motions.

The following references to Plaintiff's "claims" are the claims as they were tried and presented in Plaintiff's requested jury instructions, rather than as separately stated in the Amended Complaint. Defendant did not object to this enumeration or characterization.

## FAIR DEBT COLLECTIONS PRACTICES ACT

■ Plaintiff's first claim under the Fair Debt Collection Practices Act ("FDCPA") was that Defendant's February 23, 1993, letter (PX 1), by inviting the debtor to call and by not mentioning writing on the reverse, would have misled a least sophisticated consumer[2] into waiving his right to obtain verification of the debt, in violation of 15 U.S.C. § 1692g. This claim was dismissed as barred by the one-year statute of limitations and because Plaintiff proved no damages proximately caused by this violation, if it were to be held to be a violation.

■ Plaintiff's second and seventh claims were that the language in the letters of February 23, 1993, and June 3, 1993 (PX 1 and PX 7) offering the debtor the option to pay the debt by having it charged to his or her VISA or Mastercard but with the addition of a processing fee for an "American Express Moneygram" amounted to an attempt by De-

---

1. In the lead case, the parties unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c). There is not similar consent in Case C–1–95–222.

2. The parties implicitly agreed that the "least sophisticated consumer" standard is applicable to judging potential violations of the FDCPA. The standard to be applied is indeed that of the "least sophisticated consumer," that is an objective standard under which a debt collector will be found to have violated the FDCPA if the communications would have deceived the least sophisticated consumer. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir.1992).

However, no evidence, either lay or expert, was offered by either party on how that standard should be applied to the facts of this case or even how to understand it in general. While the cases generally adopt this standard, there is little guidance on how to prove compliance or deviation. *Compare Rabideau v. Management Adjustment Bureau*, 805 F.Supp. 1086 (W.D.N.Y.1992) (expert witness testimony on what the least sophisticated consumer would understand). It does not seem this issue should be left to the unguided speculation of a lay jury. It was not necessary to reach this issue in this case, however, since the case was not submitted to the jury.

fendant to collect an additional fee not authorized by law in violation of 15 U.S.C. § 1692f(1). These claims were dismissed because the uncontradicted evidence proved that any such fee, voluntarily chosen by the debtor if he or she chose this payment option, would not be paid to ACB or any entity it controlled and was a standard fee charged by the processor of the payment, an independent entity. Furthermore, any claim with respect to the February 23, 1993, letter is barred by the statute of limitations.

■ Plaintiff's third claim under the FDCPA was that ACB's March, 1993, contacts and attempted contacts with the supplemental cardholders and with Mr. Lewis's neighbors were attempts to collect a debt after notice (Mr. Lewis's March 1, 1993, letter, PX 5) not to do so, in violation of 15 U.S.C. § 1692c(c). This claim was dismissed because it was outside the pleadings and the Court found any attempt to amend after the close of the Plaintiff's evidence to plead such a claim was unfairly prejudicial to Defendant, which had not discovered nor prepared with a view to trying this claim and that the claim had not in fact been tried by consent of the parties. Furthermore, any claim arising from these acts is also barred by the statute of limitations.

■ Plaintiff's fourth claim was that the June 3, 1993, letter was an attempt to collect on a debt after notice not to make further contact. While this is accurate, the Court found as a matter of law that the letter comes within 15 U.S.C. § 1692c(c)(2) as a notice of potential specified remedies, to wit, various payment plans which are available to the debtor and which is a standard remedy "ordinarily invoked by such debt collector" as a "last legal talk-off." An offer of a payment plan is surely a "remedy" of the situation. There is nothing coercive or abusive about the language of the offer and there was no evidence contradicting the Defendant's testimony that it sends this letter as a standard practice under similar circumstances as a last measure before returning the account to the creditor. If a debt collector could legitimately tell a debtor that it ordinarily sues or

recommends suit as a remedy,[3] it is certainly less coercive and more protective of the interests of debtors which the FDCPA seeks to protect to allow a debt collector to make a truthful statement that various payment plans are available.

■ Plaintiff's fifth claim under the FDCPA was that the representation that the account was in the office of one "M. Hall" for final review was false and misleading to the least sophisticated consumer in violation of 15 U.S.C. § 1692e(10). That statute provides:

"A debt collector shall not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Including

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

It was admitted that no "M. Hall" existed as an employee of ACB at the relevant office at the relevant time. Plaintiff proved no actual damages flowing from this set of statements even if false. Under the circumstances explained at trial about the customary use of pseudonyms by this debt collector and comparing ACB's practice with that found lawful as a matter of law in *Johnson v. NCB Collection Services,* 799 F.Supp. 1298 (D.Conn. 1992), the Court finds as a matter of law that the use of the pseudonym here was not a violation of the FDCPA.

■ Plaintiff's sixth claim was that the June 3, 1993, letter violates the FDCPA because it conveys a false sense of urgency, also allegedly in violation of 15 U.S.C. § 1692e(10). The Court concludes as a matter of law that no reasonable jury could find the letter conveys a false sense of urgency. Only two language items suggest any urgency:

1. The first sentence of text informs the debtor that the account is undergoing "final review," which is true: this letter is the last step before the account is transferred back to the creditor;

3. The Court understands that a debt collector could make this statement under the FDCPA only

if in fact it did regularly sue or recommend suit and was authorized to do so.

2. One-third the way down the first page, the letter states "IT IS IMPORTANT THAT ARRANGEMENTS BE MADE AS SOON AS POSSIBLE." This language is capitalized, but so is all the language on the first page. It also appears in very slightly bolder type than most of the text on the page.

These items of language contrast markedly with reported cases on this question where creditors have printed notices in red or put the word NOW in three-inch high letters, for example. A debt collector attempting to collect a seriously overdue $14,000 debt does not convey a false sense of urgency by suggesting that arrangements should be made as soon as possible. Plaintiff's sixth claim is dismissed.

■ Plaintiff's eighth and ninth claims relate to a telephone call made by ACB employee Ronald Thomas on July 8, 1994, allegedly in violation of 15 U.S.C. § 1692c. The eighth claim is that the call was an attempt to collect a debt by calling Mr. Lewis after he had given notice not to call again. The ninth claim is that the call was made after ACB had been notified Mr. Lewis was represented by counsel on all his debts. The Court dismissed both claims because no reasonable jury could have failed to find that the call was the result of bona fide error. Both of Defendant's representatives testified without contradiction that this account had been returned to American Express and that ACB requested it back when Mr. Lewis filed suit. When American Express sent the account back, it miscoded the account as a new referral, rather than a reopening, and it appeared in ACB's computer system as new. Based on that miscoding, ACB's computer generated an initial letter similar to PX 1 debt collector Thomas made the call to Mr. Lewis. However, ACB had systems in place, both manual and computer, to catch such mistakes and in fact Ms. Schohan, one of ACB's FDCPA compliance officers, caught this mistake in time to prevent the computer-gener-

ated letter from being sent. Thus ACB satisfied, as a matter of law, both elements required for the bona fide error defense: that the contact was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Plaintiff presented no contradictory evidence. While Mr. Thomas in all probability intended to collect the debt when he called—after all, that was his job function,—his placing the call at all was the result of a mistake made not by ACB, but by American Express.

## OHIO CONSUMER SALES PRACTICES ACT

■ Mr. Lewis also claimed that each violation of the Fair Debt Collection Practices Act was also a violation of the Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01 et seq.

■ In order to recover statutory damages under § 1345.09(B), a consumer must prove that the acts or practices complained of have been determined to be violations of Ohio Revised Code § 1345.02 or 1345.03 by a court of the State of Ohio in a decision made available for public inspection by the Attorney General of Ohio.

Plaintiff relied on two cases, *Liggins v. May Company*, 53 Ohio Misc. 21, 373 N.E.2d 404 (Cuyahoga County Common Pleas, 1977); and *Brown v. Lyons*, 43 Ohio Misc. 14, 332 N.E.2d 380 (Hamilton County Common Pleas, 1974).[4] In the *Liggins* case, the debt collector had used documents which simulated official court documents. The *Liggins* court decreed:

> It is further ordered, adjudged and decreed that it is a deceptive and unconscionable act or practice as defined in R.C. 1345.02 and 1345.03 for a supplier, in the process of collecting or attempting to collect upon a claim of debt arising from a consumer transaction, to use any state-

---

**4.** Plaintiff presented no evidence during his case in chief that these two cases had been made available for public inspection by the Ohio Attorney General. When the point was raised after Plaintiff rested, he requested that the Court take judicial notice of such availability which was established by the offer of PX 11 and 12. While the Court is concerned in general about the fairness of proof of an element of a plaintiff's case by judicial notice first requested after resting, there is no dispute that these decisions are in fact so available and there is no prejudice to the Defendant from taking judicial notice.

ment or notice which simulates an official document, which falsely represents or implies that it is officially authorized, issued, or approved; or which **falsely represents** the status of any legal proceedings or **other facts.**

373 N.E.2d at 406. Mr. Lewis, relying on the highlighted language, claims *Liggins* determines that any false representation of fact is a deceptive and/or unconscionable act or practice under Ohio Revised Code § 1345.02 and 1345.03.

The General Assembly provided in Ohio Revised Code § 1345.09(A), a compensatory damages remedy for unfair, deceptive, or unconscionable practices in consumer transactions. Then in 1345.09(B) it provided an additional remedy of treble damages or a statutory damage amount without proof of actual damage if the unfair, deceptive, or unconscionable act or practice had already been determined to be such an act or practice by the Ohio Attorney General by rule or by an Ohio court in a decision which suppliers could readily learn about. To read the *Liggins* case as allowing treble damages in any case where there is an arguable misstatement of fact (which amounts under Plaintiff's interpretation of the law to any interpretation of a statement which might appear false to the least sophisticated consumer), would be to read the distinction between actual and compensatory damages out of the statute. The General Assembly evidently intended a more specific description of prohibited acts than is embodied in the catchall language at the end of *Liggins*. Nothing done or alleged to have been done by ACB with respect to Mr. Lewis comes anywhere near the specific acts condemned in *Liggins*: simulating official court documents.

In the *Brown* case, the court rendered a number of conclusions of law at the behest of the Ohio Attorney General who had brought the case. Mr. Lewis relies on three of them:

12. Where a supplier has legal obligations to consumers, and where there are no valid legal defenses for not performing those obligations, a supplier who avoids or attempts to avoid those obligations commits a deceptive act and practice in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.02(A).

13. A supplier in connection with a consumer transaction who consistently maintains a pattern of inefficiency, incompetency, or continually stalls and evades his legal obligations to consumers, commits an unconscionable act or practice in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.03(A), providing an adequate legal basis for the award to the consumer of punitive damages in an action where such damages have been requested from the court.

16. Where a supplier in connection with a consumer transaction knowingly makes a misleading statement of opinion on which the consumer is likely to rely to his detriment, the supplier commits an unconscionable act or practice in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.03(A).

332 N.E.2d at 386.

None of the practices determined in *Brown* to violate Ohio Revised Code §§ 1345.02 or 1345.03 comes close to any conduct alleged against ACB in the evidence. There was no proof that ACB avoids its legal obligations to consumers (12), engages in a pattern of inefficiency, incompetency, stalling or evasion (13), or made any misleading statement of opinion (16).

## COMPENSATORY DAMAGES

■ Mr. Lewis's attempts to prove actual damages also failed under both statutes. He did not attempt to prove any "economic" damages. Rather, he asserted he suffered mental distress resulting in headaches, indigestion, and fitful sleep throughout the period of ACB's attempted collection and continuing up to the time of trial. He offered no medical evidence and admitted that he had not seen a physician for any of the claimed ills, but had self-medicated with aspirin and Tums. The debt involved here is over $14,-000. During 1994 Mr. Lewis admittedly had somewhere in the vicinity of $50,000 unpaid credit card debt outstanding. He had extensive negotiations with American Express over this particular debt and became involved in at least three lawsuits relating just to this

debt.[5] Even assuming that the efforts of ACB to collect the debt added to his distress, he offered no competent testimony linking his distress to those parts of ACB's efforts which he challenged as unlawful, as compared to, for example, his admitted upset that the case had been referred to a collection agency at all despite his ongoing conversations with American Express. Mr. Lewis could not remember, either at deposition or trial, the details of any correspondence he received from ACB, yet his trial position was that the FDCPA violations were in the details. Mr. Lewis had so little recollection of the July 8, 1994, telephone call, which lasted less than a minute, that he had remembered it as coming from a woman at 8:00 a.m. on a Sunday, whereas the proof showed that it occurred around 10:30 a.m. on a Friday and the caller was male. This is not an adequate factual basis for an award of mental distress damages. *De minimis, non curat lex.*

## ORDER FOR JUDGMENT

Accordingly, the Clerk will enter judgment dismissing all claims made in this case with prejudice.

---

5. The above-captioned two cases and a collection action by American Express against him in the Franklin County Common Pleas Court.