Ron POWELL, Plaintiff,

v.

COMPUTER CREDIT, INC., Defendant.

No. C–3–96–149.

United States District Court,
S.D. Ohio,
Western Division.

July 24, 1997.

Jason David Fregeau, Yellow Springs, OH, for plaintiff.

David W. Reid, Coolidge, Wall, Womsley & Lomb, Dayton, OH, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgment (doc. # 29), the Plaintiff's Motion for Partial Summary Judgment as to Defendant's Liability (doc. # 32), and the Defendant's Motion to Strike Plaintiff's Notice of Supplemental Authority (doc. # 42, which moves to strike doc. # 40). For reasons explained below, the Defendant's Motion for Summary Judgment is **HEREBY GRANTED**, the Plaintiff's Motion for Partial Summary Judgment is **HEREBY DENIED**, and the Defendant's Motion to Strike is **HEREBY DENIED.**

## I. BACKGROUND

This case involves the Defendant Computer Credit, Inc.'s attempts to collect a $34.54 debt allegedly owed by the Plaintiff Ron Powell to Mercy Medical Center. The Plaintiff contends that the mailings sent to him are in violation of the FDCPA. Details of these mailings appear in separate sections below.

The Plaintiff seeks statutory damages, attorney's fees and costs, and other relief

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v, Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party may not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). ("In other words, the movant could challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery, ... if the [nonmoving party] did not 'put up,' summary judgment [is] proper.") On those issues for which it shoulders the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)) (emphasis omitted). For those issues where the moving party will *not* have the burden of proof at trial, the movant must "point[ ] out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The nonmoving party then must make a showing sufficient to establish a genuine dispute of fact with respect to that element. *Id.* This showing must amount to more than pointing once again to the pleadings—the movant "must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B. Fair Debt Collection Practices Act

#### 1. Purpose

Congress stated its findings and declared its purpose in passing the Fair Debt Collection Practices Act [1] ("FDCPA") in 15 U.S.C. § 1692, which states:

---

1. 15 U.S.C. §§ 1692 through 1692o.

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. . . . Existing laws and procedures for redressing these injuries are inadequate to protect consumers. . . . Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

. . . .

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection are not competitively disadvantaged and to promote consistent State action to protect consumers against debt collection abuses.

### 2. Validation of Debts— 15 U.S.C. § 1692g

■ A debt collector must comply with the "notice" requirement of the FDCPA, which is set forth in 15 U.S.C. § 1692g:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if *different* from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

### 3. False or Misleading Representations—15 U.S.C. § 1692e

■ The FDCPA also requires honesty in the collection of a debt. 15 U.S.C. § 1692e states, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector. . . .

#### 4. Least Sophisticated Consumer Standard

■ Violations of the FDCPA are determined by using the understanding of the "least sophisticated consumer."[2] *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992). "While the cases generally adopt this standard, there is little guidance on how to prove compliance or deviation." *Lewis v. ACB Business Services, Inc.,* 911 F.Supp. 290, 292 n. 2 (S.D.Ohio 1996) Although "the least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor," *Terran v. Kaplan,* 109 F.3d 1428, 1431–32 (9th Cir.1997) (citation and internal quotation marks omitted), the least sophisticated consumer test retains an element of reasonableness. *Gammon v. GC Services Limited Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993). For example, "[e]ven the least sophisticated consumer understands that the word 'or' means that one of two alternative will be taken," *Moore v. Ingram & Associates, Inc.,* 805 F.Supp. 7, 9 (D.S.C. 1992), and "the least sophisticated debtor understands that the phrase 'could result in' connotes a possible future occurrence and not an inexorable certainty." *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1138 (D.Del.1991).

#### 5. Damages

■ A civil cause of action is authorized for violations of the FDCPA. 15 U.S.C. § 1692k(a) provides for actual damages, statutory damages not exceeding $1000, and attorney's fees and costs. Statutory damages are limited to $1000 per proceeding, not per violation. *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 651 (6th Cir.1994).

■ In determining the amount of damages to award, the Court must consider "the frequency and persistence of noncompliance by the debt collector." 15 U.S.C. § 1692k(b)(1). By stating that a court in considering statutory damages in an individual FDCPA suit should consider "the frequency and persistence of noncompliance by the debt collector," Congress meant that the Court should consider the debt collector's noncompliance as to the individual plaintiff only, and not to others who may have been subject to the debt collector's noncompliance. *Dewey v. Associated Collectors, Inc.,* 927 F.Supp. 1172, 1175–76 (W.D.Wis.1996).

### C. Supplemental Jurisdiction

■ Federal courts may exercise jurisdiction over state law claims which are related to the federal claims that are before the court under federal question jurisdiction. 28 U.S.C. § 1367(a) states:

> Except as otherwise provided ..., in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

However, 28 U.S.C. § 1367(c) provides an enumerated list of circumstances under which the Court may decline to exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**2.** Courts also refer to this as the "least sophisticated debtor" standard.

## III. MOTION TO STRIKE

On May 28, 1997, the Plaintiff filed a "Notice of Supplemental Authority" (doc. # 40) to his Motion for Partial Summary Judgment. Attached to the Notice is a case recently decided by a district court which construed the very language at issue in this case.

■ The Defendant filed a Motion to Strike the Plaintiff's Notice (doc. # 42), arguing that the Court had once previously reminded the Plaintiff of his responsibility under S.D. Ohio L.R. 7.2(a)(2) to seek leave of Court prior to filing such a Notice, and that the Plaintiff did not seek such leave before filing the Notice of Supplemental Authority.[3]

■ Although the Court fully agrees that the Plaintiff should have filed a Motion seeking leave of the Court prior to the filing of this supplemental authority, the Court will allow the supplemental authority because the case was decided after the Plaintiff filed his Motion for Partial Summary Judgment, and because the case construes language which is almost identical to the language at issue in this case. The Court will allow the "amendment" to the Motion for Partial Summary Judgment as not prejudicial to the Defendant.[4]

Accordingly, the Defendant's Motion to Strike is **HEREBY DENIED.**

## IV. COMPUTERGRAM OF MAY 18,1995

■ The Plaintiff alleges that a "ComputerGram" sent to him on May 18, 1995 violates the FDCPA because it fails to state that the letters are from a debt collector, because the letters fail to give the notice required by § 1962g, and because the yellow and white "ComputerGram" simulated a telegram and conveyed or attempted to convey a false sense of urgency. Further, the Plaintiff argues that the Defendant created confusion by sending a collection notice which appears on its face to be from Mercy Medical Center. The Defendant argues that the ComputerGram was not a collection notice from a debt collector and therefore is not subject to the FDCPA. The Court agrees with the Defendant's conclusion—the ComputerGram is a communication from Mercy Medical Center and not the Defendant.

The ComputerGram was sent in a plain white business size envelope with two vertical yellow stripes on the left edge, with a return address of a post office box. On the envelope, in bold faced type near the top, is a message which states: **"IMPORTANT NOTICE ENCLOSED–FIRST CLASS MAIL".** The ComputerGram which was contained within the envelope appears to be a letter-sized document printed on white paper which bears a broad yellow stripe (approximately 3 centimeters) across the portion of the paper on which the recipient's return address is printed. Across the top of the paper, in type approximately one centimeter high is the caption "ComputerGram", which is flanked on either side by a yellow horizontal stripe approximately two millimeters wide. The ComputerGram itself is addressed to the Plaintiff at his home address, lists as, a re-

**3.** The Court is troubled by Plaintiff's argument that he filed the Notice in compliance with S.D. Ohio L.R. 7.2(a)(2). The Plaintiff rogues that because L.R. 7.2(a)(2) allows filing of supplemental memoranda "upon leave of the Court for good cause shown," all the Plaintiff need do is file the supplemental memoranda and the Court is free to consider or disregard the memoranda as it sees fit.

The Plaintiff's argument is clearly incorrect based upon the plain language of the rule. The rule clearly states that leave of the Court must be obtained prior to filing supplemental memoranda, and in order to obtain leave of the Court, the Plaintiff must file a motion to obtain such leave. Contrary to Plaintiff's argument, such a motion cannot be implied by a party by the mere filing of a supplemental memorandum.

In the future, should Plaintiff's counsel wish to file supplemental memoranda or make any other amendment for which the Plaintiff must obtain leave of the Court, the Plaintiff must file a Motion for Leave to File (or to Amend), and must attach to that Motion a copy of that document which the Plaintiff wishes to file. The Court will then take appropriate action.

**4.** The Court's finding that the "amendment" is not prejudicial is also based in part upon the fact that the Court rejected the Plaintiff's argument and found that even allowing the "amendment," summary judgment in favor of the Defendant is appropriate. Were the Court not able to so find, the Defendant would have to be provided an opportunity to set forth legal arguments to refute the Plaintiff's new argument.

turn address Mercy Medical Center Billing Department, includes the Plaintiff's account number, includes the Plaintiff's insurance claim number, lists Mercy Medical Center's Billing Department telephone number, and specifies the amount due as $34.54. Additionally, a line of text in italic print just above the main text of the ComputerGram states: "Please return upper portion with payment to Mercy Medical Center." The main text of the ComputerGram states:

> Thank you for choosing Mercy Medical Center to meet your health care needs. According to our records, your account remains unpaid. If you have any questions regarding this account or you have not received a statement prior to this notice, please contact us immediately. If you feel there is a problem with your insurance company paying the claim, please contact the insurance company or our office as soon as possible.
>
> We hope that you will take this final opportunity to pay this account in full or discuss this immediately with our office. We appreciate your prompt attention in this matter.
>
> Thank you.

Undisputed evidence presented to the Court indicates that the above letter is a communication from Mercy Medical Center, and therefore, is not subject to the FDCPA, which does not apply to creditors who attempt to collect their own debts in their own name. 15 U.S.C. § 1692a(6). First, the return address and telephone number clearly indicate that the communication was from Mercy Medical Center. Second, the text of the letter itself first thanks the recipient for choosing Mercy Medical Center, and invites the recipient to telephone Mercy Hospital regarding the unpaid bill.

The Plaintiff points out that the ComputerGram was printed by the Defendant on the Defendant's stationery, and that the ComputerGram was mailed by the Defendant. Because of this printing and mailing, the Plaintiff argues that the ComputerGram is subject to the FDCPA as a communication from a debt collector. The Court finds, however,

that under the undisputed facts of this case, that the ComputerGram of May 18, 1995, is not a communication from a debt collector.

In reviewing Defendant's Exhibit A (doc. # 29, tab G), the Court notes that Mercy Medical Hospital received an example of a collection letter from the Defendant (Womacks Dep. at 34) and made significant changes to the language of the letter before approving the letter. The changes were significant enough that the communication in the letter was meant to be a communication from Mercy Medical Center and not from the Defendant. This is especially true in light of the fact that the primary motivation behind the initial decision to send the ComputerGram was past experience with referring accounts to debt collectors without first receiving a statement from Mercy Medical Center (Womacks Dep. at 58–59), a situation which was perceived as less than desirable.

Thus, the Court finds, based upon the undisputed facts, that Mercy Medical Center used the Defendant as merely a mailing service and not a collection service.[5] The ComputerGram is not a communication from a debt collector and therefore is not subject to the FDCPA.

## V. LETTER OF JUNE 1, 1995

The Plaintiff also alleges that a letter sent to the Plaintiff from the Defendant on June 1, 1995 violates the FDCPA by conveying a false sense of urgency, and by "overshadowing" the notice required by § 1692g.

The letter of June 1, 1995 is printed on the letterhead of Computer Credit, Inc., and lists an address in Winston–Salem, North Carolina. It is addressed to the Plaintiff and contains a summary of the creditor information, specifically listing Mercy Medical Center's address and telephone number as the creditor. At the bottom of that letter, the reader is informed to "PLEASE SEE IMPORTANT NOTICE ON BACK," and on the reverse of the letter the statutorily required notice is set forth. The text of the letter states:

> This notice will serve to inform you that your overdue balance with Mercy Medical

5. *See* § 1692a(2) (stating that a communication may be sent "indirectly").

Center has been referred to Computer Credit, Inc. The hospital insists on immediate payment or a valid reason for failure to make payment. The law prohibits us from collecting any amount greater than the obligation stated above. Unless you notify us to the contrary, we will assume the amount due is correct. This communication is sent to you in an attempt to collect this debt. Any information obtained will be used for that purpose. To avoid further contact from us, pay the above debt or contact the hospital to make arrangements for settlement. Payment should be sent directly to the hospital.

The text of the notice which appears on the back of the letter states:

### NOTICE

This debt will be assumed to be valid unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of this notice. If you notify us, in writing, within this thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment, as applicable, and a copy of such verification or judgment will be mailed to you. Upon written request within the thirty-day period, we will provide you with the name and address of the original creditor if different from the named creditor.

### A. False Sense of Urgency

 The Court has examined the above notice and finds that, as a matter of law, that the notice would not convey a false sense of urgency to the least sophisticated consumer. The first sentence of the notice merely informs the debtor that the account has been referred to the Defendant for collection. The second sentence does not convey a false sense of urgency because the least sophisticated consumer would understand the two alternatives offered in the sentence, and because of the reasons set forth in section B., below. No other language in the communication could convey to the least sophisticated consumer a false sense of urgency. *Accord, Gammon v. Belzer,* 1997 WL 189291, No. 96–C–5936 (N.D.Ill., Apr. 11, 1997).

The Court makes the same observation here as did the court in Lewis, 911 F.Supp. at 294 (S.D.Ohio 1996): "These items of language contrast markedly with reported cases on this question where creditors have printed notices in red or put the word NOW in three-inch high letters ..." The present communication is also to be contrasted with the communication at issue in *Rosa v. Gaynor,* 784 F.Supp. 1, 4 (D.Conn.1989), in which the court found that a false sense of urgency was conveyed to a Connecticut plaintiff by a notice which left the impression that either suit would be filed in Connecticut, where the Defendant was not licensed to practice law, or that suit would be filed in Ohio, when the FDCPA prohibited suits in a distant forum. Because either alternative could not be taken, the court reasoned, the communication created a false sense of urgency. *Id.*

In short, the Plaintiff's argument on this issue is not compelling, and the Court's examination of the letter and review of the relevant case law indicates the letter does not convey a false sense of urgency to the least sophisticated consumer.

### B. Overshadowing

 The Plaintiff argues that the sentence, "The hospital insists on immediate payment or a valid reason for your failure to make payment," overshadows and/or negates the notice which appears on the reverse of the letter. The Plaintiff relies upon *Savino v. Computer Credit Inc.,* 960 F.Supp. 599, 603 (E.D.N.Y.1997), which found that a collection letter identical to the one at issue in this case (except for the name of the creditor and debtor and other identifying information) violated the FDCPA. The *Savino* court stated that because the letter stated that "the hospital insists on immediate payment," the least sophisticated consumer would be left with the impression that he or she would need to act immediately if the debt is to be disputed. Upon an examination of the language of the letter, and a review of the relevant case law, this Court disagrees with the *Savino* court, and finds that, based on the undisputed facts before the Court, that the language of the letter does not overshadow the required notice.

The sentence at issue sets forth two alternatives: The debtor may make immediate payment, or, if he has a valid reason, may not make immediate payment. "[E]ven the least sophisticated consumer understands that the word 'or' means that one of two alternative will be taken," *Moore*, 805 F.Supp. at 9. The Court does not agree with the Plaintiff's contention that the least sophisticated consumer would interpret the sentence at issue as requiring that the debt itself not be valid. The sentence clearly states that the consumer need only have a "valid reason" for not paying immediately, and, after reading the required notice on the back of the letter, the least sophisticated consumer would understand that an intent to exercise those rights is a "valid reason" for not paying immediately. The Court finds it significant that an alternative to paying "immediately" is offered to the consumer—this is especially significant because the two alternative are found in the same sentence, separated only by the conjunction "or", which clearly indicates a choice.[6] The Court notes that the most compelling cases in which "overshadowing" has been found, the debt collector has given the debtor time limitations in which to pay (i.e., five days or ten days), which contradicted the required notice that the debtor had thirty days in which to dispute the debt or to request validation of the debt. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988); *Wiener v. Bloomfield*, 901 F.Supp. 771, 775 (S.D.N.Y.1995); *Tsenes v. Trans–Continental Credit and Collection Corp.*, 892 F.Supp. 461, 465 (E.D.N.Y.1995); *Edwards v. National Business Factors, Inc.*, 897 F.Supp. 455, 458 (D.Nev.1995).

## VI. LETTER OF JUNE 15, 1995

The Plaintiff also alleges that a letter sent to the Plaintiff from the Defendant on June 15, 1995 violates the FDCPA in three ways: first, by conveying a false sense of urgency;

second, by stating incorrectly that Defendant has made "repeated attempts" to encourage the Plaintiff to pay; and third, by implying that the hospital might pursue involuntary settlement.

The June 14, 1995 letter follows the same format as the June 1, 1995 letter, except that the text of the letter is different and the notice does not appear on the back of the letter (and is not required). The text of the June 14, 1995 letter states:

> After repeated attempts to encourage you to pay your long overdue account with Mercy Medical Center, there is still an outstanding balance. Therefore, we are returning this account to the hospital for such disposition as may be considered appropriate. This final letter is sent as our last attempt to collect this debt, and any information obtained will be used for that purpose.
>
> If you desire to settle this overdue balance, contact the hospital immediately. The hospital may pursue additional means to collect your debt. While we suggest that you take steps to voluntarily settle this long overdue account, this is our FINAL NOTICE. Your continuing failure to pay is now in the hands of the hospital.

### A. False Sense of Urgency

The Court has examined the above notice and finds that, as a matter of law, the letter would not convey a false sense of urgency to the least sophisticated consumer. The "repeated attempts" language and the "involuntary settlement" language is addressed separately below, and none of the remaining language could be interpreted by the least sophisticated consumer as conveying a false sense of urgency.

### B. "Repeated Attempts"

The Plaintiff argues that the sentence "After repeated attempts to encourage you to pay your long overdue account with Mercy Medical Center, there is still an out-

---

6. *Accord Burns v. Accelerated Bureau of Collections of Virginia, Inc.*, 828 F.Supp. 475, 477 (E.D.Mich.1993) (finding no "overshadowing" in a collection letter which stated that it was important that payment be made "today", where re-

quest for payment contained no time limit or threat, and was immediately followed by two easily readable paragraphs regarding the debtor's right to dispute the debt).

standing balance." violates § 1692e(10)by misrepresenting that "a barrage of communications had been made" (doc. # 32 at 11). The Plaintiff contends that the "least sophisticated consumer would be either shamed or frightened—shamed at having overlooked so many demands and frightened that Defendant would indeed suggest 'involuntary' methods of collection to the hospital." *Id.* The Court finds no merit to the Plaintiff's argument.

Repeated attempts were made to encourage the Plaintiff to pay Mercy Medical Center. At least two, perhaps three statements were sent by the hospital prior to the Defendant's collection activities. (Womacks Dep. at 19.) The "repeated attempts" language is written in the passive voice and makes no representation that the Defendant has made all the "repeated attempts" to collect, and the least sophisticated consumer would understand that repeated attempts to collect the account could come from both the hospital and the debt collector.

Additionally, as is addressed more fully in section C., below, the notice makes clear that the Defendant will have no input in how the account would be handled after the June 15 letter. The letter clearly states: "Your continuing failure to pay is now in the hands of the hospital." The Court finds that the least sophisticated consumer would not interpret the letter as stating that the Defendant would suggest "involuntary" means of settlement to Mercy Medical Center.

Thus, no misrepresentation was made, and no violation of § 1692e(10) is present.

### C. "Voluntary Settlement"

██ The Plaintiff argues that by stating "While we suggest that you take steps to voluntarily settle this long overdue account, this is our FINAL NOTICE. Your continuing failure to pay is now in the hands of the hospital.", the Defendant violates § 1692e(5), which prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken.

The Plaintiff's, argument is not compelling. First, the Court finds from the language of the letter, no threat of legal action is present. This Court is unwilling to accept that merely encouraging a debtor to take steps to "voluntarily" settle a long overdue account "threatens" that "involuntary" settlement, or court action is imminent. The language of the notice is clear the debt collector is informing the debtor that the debt collector's attempts to collect the debt are about to come to an end and that the decision of what will happen next will be made by the creditor. The debt collector is expressly disclaiming any control over what will occur next by stating "Your continuing failure to pay is in the hands of the hospital." The least sophisticated consumer would not interpret this notice as an indication that legal action was imminent. He or she would understand this letter as stating future decisions regarding his or her past due account would be made by the hospital and not the Defendant.

Moreover, even if the Court were to hold that the language in the letter was "threatening to take legal action" when the ability or the intent to take legal action was not present, the Plaintiff has not met his burden of proving that the ability or the intent to take legal action was not present. As stated previously, on those issues for which it shoulders the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone*, 799 F.2d at 259 (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)) (emphasis omitted). Plaintiff states in his Motion for Partial Summary Judgment: "At the tims [sic] this threat [of involuntary settlement] was made, Defendant had no indication from the hospital whether legal action would be considered, much less implimented [sic]." If true, this statement might indicate that there was no intent to take legal action; however, this statement is not supported by the Plaintiff. In its review, the Court found that this statement is not supported by the record. The Court is under no obligation to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80.

Thus, the Court finds that the letter did not threaten legal action as a matter of law when viewed from the standpoint of the least sophisticated consumer. Moreover, the Court found that even if the letter contained such a "threat," the Plaintiff has not shown any dispute of material fact regarding whether legal action could not be taken or that the intent to take such action was not present. Accordingly, there is no violation of the § 1692e(5) is present.

\* \* \*

For all the reasons stated above, the Court finds that no dispute of material fact exists which would preclude the granting of summary judgment in favor of the Defendant as to all claims brought by the Plaintiff under the FDCPA.

## VII. SUPPLEMENTAL JURISDICTION OVER STATE CLAIM

The Plaintiff alleges that the above communications also violate the Ohio Consumer Sales Practices Act, Ohio Rev.Code § 1345.01 *et seq.* At the outset, the Court notes, as the Sixth Circuit did in *Lee v. Thomas & Thomas,* 109 F.3d 302, 304 (6th Cir.1997), this Act, "on its face, [does not seem] to have any application to the facts complained of here." But whether a cause of action exists under these facts is an issue which the Court need not decide today. Because the Court is dismissing the claims over which it has original jurisdiction, the Court declines to exercise jurisdiction over the pendant state claim. 28 U.S.C. § 1367(c)(3).

## VIII. CONCLUSION

For the reasons stated above, the Court **HEREBY GRANTS** the Defendant's Motion for Summary Judgment, **HEREBY DENIES** the Plaintiff's Motion for Partial Summary Judgment, and **HEREBY DENIES** the Defendant's Motion to Strike.

**LET JUDGMENT STAND IN ACCORDANCE WITH THE FOREGOING.**