Kiran **AKALWADI**, Plaintiff,

v.

**RISK MANAGEMENT ALTERNATIVES, INC.**, Defendant.

**No. CIV. RDB–02–3604.**

United States District Court, D. Maryland, Northern Division.

Sept. 22, 2004.

Devashis A. Kayal, Dev A. Kayal LLC, Silver Spring, MD, for Plaintiff.

Jeffrey L. Friedman, Friedman and Associates LLP, Reisterstown, MD, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

In the case now pending, Plaintiff Kiran Akalwadi ("Akalwadi" or "Plaintiff") alleges that Defendant Risk Management Alternatives, Inc. ("RMA") violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and the Maryland Consumer Debt Collection Act, Md.Code Ann., Com-

mercial Law § 14–201 *et seq.* ("MCDCA") in its efforts to collect a debt arising from an accident involving a vehicle rented by Akalwadi. Specifically, Akalwadi's Amended Complaint sets forth the following ten causes of action: (1) FDCPA—false representations to a consumer credit reporting agency; (2) FDCPA—false representations to Plaintiff as to the existence of a second debt; (3) FDCPA—false representations to Plaintiff as to the balance of the original debt; (4) FDCPA—failure to provide verification of the debt; (5) FCRA—failure to reinvestigate claims of misreporting Plaintiff's debts to a consumer credit reporting agency; (6) FDCPA—abusive debt collection practices; (7) FDCPA—unlawful communication in connection with a debt; (8) FDCPA—use of unfair or unconscionable means to collect debts; (9) MCDCA—disclosing false information which affected Plaintiff's credit reputation; and (10) MCDCA—abusive debt collection practices. Before the Court is RMA's Motion for Summary Judgment on all counts and Akalwadi's Cross–Motion for Summary Judgment on Counts I–IV and Counts VII–IX pursuant to Federal Rule of Civil Procedure 56. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D.Md.2004). For the reasons that follow, RMA's Motion for Summary Judgment will be GRANTED as to Count III and DENIED as to all other Counts and Akalwadi's Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

In October 1999, Akalwadi was involved in an accident with the vehicle he rented for personal purposes from Enterprise Leasing Corp. ("Enterprise"). (Am. Compl.¶ 6.) As a result of the accident, Enterprise sent Akalwadi a letter on December 13, 1999 informing him that he would be responsible for repair costs and for loss of use of the vehicle, in an amount

totaling $5,729.15. (Compl. at Ex. A.) Enterprise catalogues accidents to its vehicles by a specific "DX number" and Akalwadi's accident was assigned the number: DX0506837. (Am.Compl.¶ 6.) It is undisputed that Enterprise did not receive timely payment from Akalwadi.

On or about March 13, 2000, Enterprise placed Akalwadi's debt with RMA, an accounts receivable company and debt collection agency, for collection. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. B, Ans. No. 17.) Shortly thereafter, on March 18, 2000, Akalwadi received notice from RMA that Enterprise had placed the account with its company for collection. (Am. Compl.¶ 7.) In the notice, RMA assigned the debt account number 15771451000, referencing Enterprise as the creditor and the Enterprise internal catalogue number DX0506837. (Am.Compl.¶ 7.) The notice stated the amount due on the account was $8,020.81, about $2,000 more than the amount stated in Enterprises' December 13, 1999 letter to Akalwadi. (Compl. at Ex. B.) In fact, the $8,020.81 amount included a $2,291.66 RMA collection fee. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. B, Ans. No. 15.)

After receipt of RMA's March 18, 2000 letter, Akalwadi avers that he contacted Kerry Hagan, an Enterprise representative, and confirmed that the balance reported by RMA was inaccurate and the he would receive a credit for the excess amount. (Am.Compl.¶ 8.) Based on this understanding, Akalwadi entered into an agreement with RMA to pay the remaining balance in $200 monthly installments. (Am.Compl.¶ 9.) However, RMA contends that the amount reported on the account was accurate because it reflected both the damages to the rental vehicle and RMA's collection fees. (Def.'s Mem. Supp. Summ. J. at 1.) Paragraph 4(h) of the Enterprise rental agreement, which Akalwadi signed,

states: "Renter expressly agrees to pay to Owner on demand ... expenses incurred by Owner [Enterprise] in the collection of monies due Owner per this agreement ...." (Pl.'s Mem. Supp. Partial Summ. J. at Ex. Z.) RMA alleges that its agreement with Enterprise permits it to directly collect from the debtor the expenses and fees incurred to collect past-due accounts. (Def.'s Mem. Supp. Summ. J.at 1.) To date, RMA has not produced its contract with Enterprise that authorizes this collection procedure. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. W; Ex X.)

In April 2000, RMA began electronically deducting $200 a month from Akalwadi's checking account as payment toward the amount owed. (Pl.'s Mem. Supp. Partial Summ. J. at ¶ 9.) For a period of approximately two years those deductions were made and applied to the debt. On May 9, 2002, RMA sent a letter to Akalwadi stating that he still owed a balance of $5,070.81. (Compl. at Ex. C.) RMA assigned this second debt a separate account number (67738141030), but referenced the same creditor, Enterprise, and the same Enterprise DX tracking number as in the original March 18, 2000 collection letter. (Am.Compl.¶ 9.) Although it is not clear from the face of the letter, RMA has explained that the $5,070.81 amount is the principal balance due after crediting Akalwadi's payments, totaling $2,779.15, plus the additional $2,291.66 owed RMA for its collection fee. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. B Ans. No. 16). However, RMA's Motion for Summary Judgment states that Akalwadi had paid $2,950 toward his debt by October 2001. (Def.'s Mot. for Summ. J. at 2). In fact, it is unclear from the record how much Akalwadi owes on his Enterprise-related debt.

After receiving this notice on May 9, 2002, Akalwadi avers that he contacted RMA within thirty days and indicated that he did not owe Enterprise on this second collection account. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at Ex. D.) In addition to disputing the amount stated in the May 9, 2002 letter, Akalwadi reiterated that the debt amount reported by RMA in the initial March 18, 2000 letter was inaccurate. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at Ex. D.) Akalwadi avers that RMA's agents and representatives refused to reinvestigate the accounts and maintained that Akalwadi was obligated on two separate accounts. (Am.Compl.¶ 12.)

During this time, RMA reported Akalwadi's debt to Equifax, a consumer credit reporting agency. (Def.'s Mem. Supp. Summ. J. at 2.) An October 3, 2000 Equifax report shows that, in October 2000, RMA reported a debt owed to Enterprise in the amount of $5,729 and a balance associated with the debt of $6,821. The account number listed on the Equifax report is 325777142. (Compl. at Ex C.) On July 11, 2002, Akalwadi obtained a copy of his credit history from an online source (ConsumerInfo.com). This report of Akalwadi's credit history lists Equifax reporting two collection accounts with RMA totaling $10,142. (Compl. at Ex. C.) Both collection accounts are listed for the same amount, $5,071. (Compl. at Ex. C.) The first collection account indicates that it was opened in March 2000 and lists an account number 325777142. (Compl. at Ex. C.) The second collection account indicates that it was opened in April 2002 and lists the same account number that appeared in the May 9, 2002 RMA letter to Akalwadi (67738141030) (Compl. at Ex. C.) This erroneous "double reporting" is undisputed and resulted from two different RMA offices reporting the same debt to Equifax. (Def.'s Mot. for Summ. J. at 2).

Akalwadi twice challenged the accuracy of these two reported debts with Equifax, first on August 30, 2002, and second on September 18, 2002. (Pl.'s Mem. Supp.

Partial Summ. J. at Ex. L.) Equifax verified the information with RMA. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. O; Ex. S at 4.) RMA represented that it reinvestigated the debts and that the debt information was accurate. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. O; Ex. S at 4.) On September 23, 2002, Equifax notified Akalwadi that RMA determined that both accounts and their balances were being reported accurately. (Compl. at Ex. F; Pl.'s Mem. Supp. Partial Summ. J. at Ex. G.)

On November 4, 2002, Akalwadi filed the Complaint in this case. In December 2002, RMA contacted the credit reporting agencies and removed all references to Akalwadi's debt. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. T; Ex. U; Ex. V.) On June 25, 2003, Akalwadi filed an Amended Complaint. At the conclusion of all discovery, RMA filed a motion for summary judgment on all counts pursuant to Rule 56. Akalwadi also filed a motion for summary judgment as to Counts I–IV and Counts VII–IX.

### STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court fur-

ther explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249, 106 S.Ct. 2505. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, "[w]hen the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Id.* at 252, 106 S.Ct. 2505. Furthermore, District Courts have an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (*citing Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F.Supp. 170, 172 (D.Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir.1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("neither party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983).

## DISCUSSION

### A. Fair Debt Collection Practices Act

The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors. *Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582, 590 (D.Md.1999) (*citing United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135

(4th Cir.1996)). The FDCPA covers debt collectors who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (*quoting* 15 U.S.C. 1692a(6)). It is undisputed that RMA is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

It is well established that "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in attempt to collect debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–8 (4th Cir.1994). The FDCPA prohibits "the false representation of ... the character, amount, or legal status of any debt" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(10). The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability. *Spencer*, 81 F.Supp.2d at 590–91. Akalwadi alleges numerous violations of the FDCPA and seeks summary judgment on Counts I–IV and VII–VIII, all of which allege violations of the FDCPA. RMA seeks summary judgment on all Counts.

### 1. Statute of Limitations

Before contemplating the substantive legal issues raised by the parties, it is necessary to first determine whether any of Akalwadi's FDCPA claims are barred by the applicable statute of limitations. Although the statute of limitations issue was not briefed in either party's summary judgment motion, RMA asserted a statute of limitations defense in its Answer to Akalwadi's Amended Complaint. Under the FDCPA there is a one-year statute of limitations: "An action to enforce any lia-

bility created by this title may be brought ... within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent. *See Peoples v. Wendover Funding,* 179 F.R.D. 492, 499 (D.Md.1998) (*citing Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259, 261 (8th Cir.1992) (stating that a cause of action accrues under the FDCPA when creditor mails collection letter because that date was last opportunity creditor had to comply with the FDCPA)).

### a) Count I[1]

■ In Count I Akalwadi contends that RMA violated the FDCPA when it inaccurately reported his Enterprise debt to a credit reporting agency. (Am.Compl.¶ 29). Although the exact dates that RMA reported Akalwadi's account to Equifax are not clearly outlined in either party's brief, Akalwadi would not have known of such a violation until the time that he obtained a credit report evidencing the possible FDCPA violation. *See generally* 1 Theodore Eisenberg, *Debtor–Creditor Law,* § 8.04[10] (2004) (explaining that when the debtor may not be aware of the violations' existence, including, for example, being reported to a credit reporting agency, the limitation period should begin when the consumer should have known of the violation).

The record indicates that Akalwadi received a credit report inaccurately reflecting his indebtedness on October 3, 2000 (Compl. at Ex D). The Complaint in this case was filed on November 4, 2002, over two years after Akalwadi was aware of the inaccurate October 2000 reporting of his account to Equifax. Therefore, any alleged violation of the FDCPA resulting from that particular report is time-barred.

On July 11, 2002, Akalwadi obtained a credit report that listed the same Enterprise-related RMA collection account twice, both times in the amount of $5,071. Akalwadi filed his November 4, 2002 Complaint within a year of learning of this possible FDCPA violation and, therefore, his claim relating to this alleged violation is not time-barred.

### b) Count II

Count II alleges violations of the FDCPA as a result of the letter sent by RMA to Akalwadi on May 9, 2002 stating that he owed a balance of $5,070.81. This communication falls within the one year FDCPA statute of limitation and claims related to it are not time-barred. *See Pittman v. J.J. Mac Intyre Co. of Nev., Inc.,* 969 F.Supp. 609 (D.Nev.1997); *Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1360 (S.D.Fla.2000) (holding that some FDCPA claims related to letters falling within the one year statute of limitations were not time-barred, while some claims based on letters sent more than a year before the complaint was filed were time-barred).

### c) Counts III & VIII

In Counts III and VIII, Akalwadi avers that RMA violated the FDCPA when it misstated the balance due on the original account as set forth in the March 19, 2000 collection letter. Claims, however, relating to the original, March 18, 2000, letter are time-barred because this letter is dated more than two years before Akalwadi filed his Complaint, on November 4, 2002. Therefore, Count III is dismissed, as it contains allegations only relating to the March 18, 2000 letter from RMA. Similarly, Count VIII is dismissed in part, as it relates to the March 18, 2000 RMA letter,

---

**1.** All references to Counts relate to Akalwadi's claims in his Amended Complaint.

but allegations relating to the May 9, 2002 letter are not time-barred.

### d) Count IV

Although Count IV claims that RMA violated FDCPA 15 U.S.C. § 1692e(2), the assertions concerning RMA's failure to provide verification of a debt more appropriately describe conduct prohibited under FDCPA 15 U.S.C. § 1692g, entitled validation of debts. Akalwadi claims that he asked for verification of his debt, but that RMA failed to provide this information. Under FDCPA 15 U.S.C. § 1692g a debt collector must provide the consumer with validation of the debt if the consumer notifies the debt collector in writing within thirty days after the debt collector's initial communication with the consumer about the debt. Any possible violation of this provision related to RMA's initial March 18, 2000 letter to Akalwadi is time-barred. However, Akalwadi's claim under Count IV related to the second letter, dated May 8, 2002, is not time-barred.

### e) Count VI & Count VII

In Count VI, all of RMA's allegedly harassing phone calls occurred in 2002 and, therefore, this claim is not time-barred under the FDCPA. Similarly, the claim in Count VII is not time-barred because the prohibited activity allegedly occurred in June 2002.

### 2. Remaining Viable FDCPA Claims

In summary, the Court will address the following viable FDCPA claims: Count I—related only to alleged false representations by RMA to Equifax occurring after November 4, 2001; Count II—alleging RMA made false representations to Akalwadi in its May 9, 2002 letter to him; Count IV—alleging failure to provide requested verification of the debt only as

related to the May 8, 2002 letter from RMA to Akalwadi; Count VI—allegations of abusive debt collection practices; Count VII-allegations of unlawful communication with debtor who had retained counsel; and Count VIII—allegations of unlawful collection fees only as related to the May 9, 2002 letter from RMA to Akalwadi. Count III is the only claim barred completely by the applicable statute of limitations.

### a) Count I

■ In Count I, Akalwadi alleges that RMA violated 15 U.S.C. § 1692e(2)(A)[2] of the FDCPA by falsely reporting two separate RMA accounts to Equifax, both of which stated an incorrect amount. (Pl's. Mem. Supp. Partial Summ. J. at 6; Ex. D; Ex. O.) Both parties have moved for summary judgment on Count I. For summary judgment to be appropriate, the moving party must show that there is no genuine issue as to any material fact. In this case, however, neither party has presented undisputed evidence as to the amount of the debt owed by Akalwadi at the time that it was reported to Equifax.

In the credit report at issue, which Akalwadi obtained on July 11, 2002, two separate collection accounts are reported both in the amount of $5,071. RMA has stated that the $5,070.81 amount, which was disclosed to Akalwadi in a letter from RMA dated May 9, 2002, is the principal balance due after crediting Akalwadi's payments, totaling $2,779.15, plus the additional $2,291.66 owed RMA for its collection fee. (Pl.'s Mem. Supp. Partial Summ. J. at Ex. B Ans. No. 16). However, RMA's Motion for Summary Judgment states that Akalwadi had paid $2,950 toward his debt by October 2001. (Def.'s Mot. for Summ. J. at 2). RMA also has stated that it is "unsure of what payments Plaintiff may

---

**2.** 15 U.S.C. § 1692(e)(2)(A) provides that the "false representation of . . . the character, amount, or legal status of any debt" is a violation of the FDCPA.

have made to the original creditor prior to the account being placed with RMA ...." (Pl.'s Mem. Supp. Partial Summ. J. at Ex. G Ans. No. 6). In addition, Akalwadi claims that RMA now states that Akalwadi currently owes $2,779.15. (Pl.'s Mem. Supp. Partial Summ. J. at 7.) Knowledge of the actual amount owed is essential to determine whether the amount reported to Equifax was, in fact, inaccurate, as Akalwadi claims. Because there is a disputed material fact, both Akalwadi's and RMA's Motion for Summary Judgment are denied concerning the claim in Count I relating to the amount RMA reported to Equifax, which was allegedly inaccurate in violation of the FDCPA.

In Count I, Akalwadi also claims that RMA erroneously reported to Equifax that he had two separate collection accounts with RMA totaling $10,142, when there was only one collection account, and that this "double reporting" violated 15 U.S.C. § 1692e(2)(A). The parties have not provided, and the Court has been unable to locate, a factually similar case brought under 15 U.S.C. § 1692e(2)(A).[3] The vast majority of cases alleging a violation of this section involve communications included in dunning letters. Under the FDCPA, the term communication, however, means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. 1692a(2). Therefore, a debt collector's reporting of a consumer's debt to a credit reporting agency would be covered by FDCPA § 1692e if the communication is false, deceptive, or misleading.[4] RMA concedes that there was an error and Akalwadi's

collection account was reported to Equifax twice, by two different RMA office locations, under two separate account numbers. (Def.'s Mem. Supp. Summ. J. at 2, 9.) RMA's double reporting of the same debt twice to Equifax is a false representation of the character and amount of Akalwadi's Enterprise-related debt.

▇▇▇ RMA, however, asserts that it is not liable under the FDCPA, and is entitled to judgment as a matter of law, because its actions fall squarely within the bona fide error defense, under 15 U.S.C. § 1692k(c) of the FDCPA. (Def.'s Mem. Supp. Summ. J. at 3.) This section of the FDCPA states: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To effectuate the FDCPA's remedial purpose, most courts interpret the bona fide error defense narrowly. *Spencer*, 81 F.Supp.2d at 591. Accordingly, the defense typically only applies to clerical mistakes. *Id.; see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992) (recognizing that "[g]enerally the term 'error' is limited to clerical mistakes, such as a minor numerical mistake in transposing numbers."). Under this section, RMA bears the burden of proof.

▇▇▇ The bona fide error rule is only available when the debt collector shows that it has procedures in place reasonably

**3.** *Morris v. Risk Management Alternatives, Inc.*, 203 F.R.D. 336 (N.D.Ill.2001) discusses a claim alleging "double reporting" by RMA to credit reporting agencies, but this case does not address the claim's validity because the decision only deals with class certification.

**4.** The act of a debt collector reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be "in connection with" the collection of a debt. 15 U.S.C. 1692e.

adapted to avoid the type of error that occurred. RMA claims that it has reasonable procedures in place. To support this claim, RMA presents the affidavit of Marilyn Balko, Vice President of Operations at RMA's Ottawa, Kansas office,[5] and a test on the FDCPA, which RMA employees must pass with a score of 100%.[6] Akalwadi contends that RMA failed to maintain procedures reasonably calculated to avoid, among other things, the duplicate reporting of collection accounts to credit reporting agencies. "The inquiry into whether a debt collector's procedures are reasonable is, 'by its nature, fact-intensive, and should therefore typically be left to the jury.'" *Gill v. Kostroff,* 82 F.Supp.2d 1354, 1360 (M.D.Fl.2000) *(quoting Narwick v. Wexler,* 901 F.Supp. 1275, 1282 (N.D.Ill.1995)). Therefore, both Akalwadi's and RMA's Motion for Summary Judgment, as to the remainder of Count I, are denied.

### b) Count II

Count II alleges a violation of the FDCPA, § 1692e(2)(A), resulting from the letter sent by RMA to Akalwadi on May 9, 2002 stating that he owed a balance of $5,070.81. First, Akalwadi contends that this letter was misleading because it contained a different account number than the original RMA letter to Akalwadi, and, therefore, appeared to be a new, second collection account with RMA. Second, he claims that the amount listed in the letter was inaccurate and, therefore, false and misleading.

■ To determine whether RMA violated § 1692e(2)(A), this Court will analyze the allegedly violative communication using the "least unsophisticated consumer" standard. *See Nat'l Fin. Serv., Inc.,* 98 F.3d at 135–36 (discussing that most

courts apply the "least sophisticated debtor" standard to evaluate violations of 1692e(5).); *see also Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985) (stating an evaluation of a claim under § 1692e(2)(A) requires analyzing whether the 'least sophisticated consumer' would be deceived by the debt collector representations of the character, amount, and legal status of the debt)). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Serv., Inc.,* 98 F.3d at 136 *(quoting Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993)).

■ Even though there is no material dispute about the contents of the May 9, 2002 collections letter, including the fact that it contained a new, separate account number, summary judgment is only appropriate when the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, when weighing the merits, the court must construe all of the evidence and reasonable inferences drawn therefrom in favor of the non-moving parties. *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548. In this case, when considering each party's motion and viewing the evidence in favor of the non-moving party, the Court does not find that the evidence is so one-sided that one party must prevail as a matter of law under the least sophisticated consumer standard. Therefore, both Akalwadi's and RMA's Motion for Summary Judgment are denied as to this claim in Count II.

Akalwadi also contends that RMA's May 9, 2002 letter violated § 1692e when it stated the incorrect amount owed in this

---

5. Balko's affidavit states "that there are office procedures and safeguards in place to insure that all of RMA's employees comply with the FDCPA ...."

6. This test was provided to Akalwadi by RMA in its Answers to Interrogatories.

letter as a result of RMA's refusal to properly apply the payments he already made on the original RMA account to this second account. However, RMA has explained that the $5,070.81 amount does take into account Akalwadi's payments, totaling $2,779.15, which RMA credited toward the original $8,020.81 RMA claims is due. As discussed above, the parties are in dispute over a material fact—the amount owed by Akalwadi. As a result, both Akalwadi's and RMA's motion for summary judgment are denied as to the remainder of Count II.

#### c) Count IV

■ In Count IV, Akalwadi appears to assert that RMA violated 15 U.S.C. § 1692g by failing to provide timely documentation of his debt after he requested verification upon receipt of RMA's May 9, 2002 letter.[7] Under § 1692g, a consumer has the right to request verification of his or her debt if the consumer notifies the debt collector in writing within thirty days after receiving initial notice of the debt. *See* 15 U.S.C. § 1692g. RMA claims that Akalwadi failed to notify RMA, in writing, within thirty days of its *initial* contact with Akalwadi about his debt. Akalwadi, however, contends that the May 9, 2002 letter was misleading because he believed that it communicated the existence of a separate RMA collection account and, as a result, he wrote a letter to RMA disputing this debt.[8] As discussed above, the determination of whether this May 9, 2002 letter was misleading to such a degree that

Akalwadi may have correctly believed it to constitute an *initial* communication on a new, second debt is not a question that this Court can decide on summary judgment in this case. This issue presents a factual question for the jury. As a result, there is a dispute of material fact as to whether Akalwadi properly disputed his debt and requested RMA to verify the debt for him. Therefore, both Akalwadi's and RMA's Motion for Summary Judgment are denied as to Count IV.

#### d) Count VI

■ Akalwadi avers that RMA violated 15 U.S.C. § 1692d(5) by resorting to abusive and harassing phone calls in order to collect the Enterprise debt. The FDCPA prohibits debt collectors from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number." 15 U.S.C. § 1692d(5).

■ Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls. In *Kuhn v. Account Control Tech., Inc.* 865 F.Supp. 1443, 1453 (D.Nev.1994), the court found that six phone calls in a span of twenty-four minutes constituted harassment in violation of § 1692d(5). In *Bingham v. Collection Bureau, Inc.* 505 F.Supp. 864, 873 (D.N.D. 1981), the court held that when a call was terminated and the collection agency called

---

7. In his Motion for Partial Summary Judgment, Akalwadi states that RMA had an obligation to respond to his notice of dispute and verify the debt pursuant to § 1692e(2). (Pl.'s Mem. Supp. Partial. Summ. J. at 7.) However, § 1692e(2) does not apply to debt verification. Looking at the facts in the light most favorable to the non-moving party, and in light of liberal pleading rules established by the Federal Rules of Civil Procedure, the Court will analyze Akalwadi's claim pursuant

to § 1692(g), which addresses a debt collector's duty to verify disputed debts.

8. Akalwadi's letter to RMA, in response to RMA's May 9, 2002 letter, appears to be incorrectly dated May 5, 2002, making it difficult to determine whether Akalwadi unequivocally sent RMA a letter disputing the debt listed in RMA's May 9, 2002 letter within the required 30 day period.

back immediately, that subsequent call alone could constitute harassment under § 1692d(5) regardless of the content of the call.

The parties are in near agreement with respect to the volume of phone calls made by RMA to Akalwadi during an approximately two-month period from late April through June 2002.[9] The evidence before this Court indicates that none of the calls were made either excessively early in the morning or late in the evening. Nevertheless, each telephone message indicated that Akalwadi should contact RMA with respect to the indebtedness. The record is unclear with respect to whether telephone messages reflected the erroneous double reported amount by two different RMA offices. The record reflects periods in which telephone calls were made on a daily basis and three telephone calls being made within five hours on the same day. (Amed.Compl.¶ 62). The reasonableness of this volume of calls and their pattern is a question of fact for the jury. *See cf. Gill,* 82 F.Supp.2d at 1360 (*quoting Narwick,* 901 F.Supp. at 1282). Therefore, both Akalwadi's and RMA's Motion for Summary Judgment are denied as to Count VI.

### e) Count VII

Akalwadi avers that RMA violated 15 U.S.C. § 1692c(a)(2) by continuing to contact Akalwadi regarding the Enterprise debt despite knowledge that he was represented by an attorney. In plain language, Section 1692c(a)(2) provides that a debt collector may not communicate with a consumer if the debt collector knows that the consumer is represented by an attorney with respect to the debt and the attorney's contact information is readily available. It is undisputed that Akalwadi informed RMA, on June 20, 2002, that he was repre-

sented by counsel and that all direct communications with him regarding the debt should cease. (Am. Compl. ¶ 99; Def's Mem. Supp. Summ. J. at 11.) It is further undisputed that three days after RMA was notified that all communications regarding the debt should go through Akalwadi's attorney, RMA's automatic dialer system contacted Akalwadi and left a message on his answering machine regarding the Enterprise debt. *Id.* In its Motion for Summary Judgment, RMA claims that it is entitled to judgment as a matter of law because any violation of § 1692c(a)(2) falls squarely within the bona fide error defense.

In support of its affirmative defense of bona fide error, RMA states that it had reasonable procedures in place to avoid this type of occurrence, but a computer error resulted in Akalwadi's name not being removed from the automated phone call database. RMA relies on *Lewis v. ACB Bus. Servs., Inc.,* 911 F.Supp. 290 (S.D.Ohio 1996) for the proposition that contacting the consumer once after receiving notice that the consumer is represented by counsel falls within the bona fide error defense. The court in *Lewis* determined, however, that the communication fell within the bona fide error defense because it was unintentional *and* the debt collector provided evidence of company procedures designed to prevent consumers from being contacted once they were represented by counsel. *Id.* In contrast, RMA has not provided sufficient evidence for this Court to determine, on summary judgment, that RMA had reasonable procedures or safeguards in place to prevent contacting consumers after it had been notified that they were represented by counsel. As discussed above in relation to Count I, the jury must weigh whether the

---

**9.** While Akalwadi contends that 28 phone calls were made by RMA, RMA contends that there were 26 calls.

limited evidence presented by RMA shows that its procedures were, in fact, reasonable. *See Gill,* 82 F.Supp.2d at 1360 (*quoting Narwick,* 901 F.Supp. at 1282). Accordingly, RMA's and Akalwadi's Motion for Summary Judgment are denied as to Count VII.

#### f) Count VIII

■■■ In Count VIII, Akalwadi claims that RMA violated the FDCPA because it charged unauthorized fees. In its May 9, 2002 collection letter to Akalwidi, RMA continued to include these fees, totaling $2,779.15, in the total amount due. Akalwadi claims that these fees are prohibited under 15 U.S.C. § 1692f(1) of the FDCPA, which states, in part, that "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) [is not allowed] unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

RMA claims that it can lawfully collect these fees because these charges are expressly authorized by the Enterprise agreement that created Akalwadi's debt. The Enterprise agreement, which Akalwadi signed, states: "Renter expressly agrees to pay to Owner on demand ... expenses incurred by Owner [Enterprise] in the collection of monies due Owner per this agreement ...." RMA alleges that it also has an agreement with Enterprise that permits it to directly collect expenses incurred in the collection of Enterprise's past-due accounts, but it is disputed whether such an agreement exists because

RMA has not produced a written contract. There is also no evidence in the record detailing what expenses were actually "incurred" in the collection of Akalwadi's debt. Therefore, disputes of material fact exist as to RMA's agreement with Enterprise and the amount of fees to which RMA may be entitled. Accordingly, RMA's and Akalwadi's Motion for Summary Judgment are denied as to Count VIII.

### B. Fair Credit Reporting Act

In Count V, Akalwadi alleges that RMA violated 15 U.S.C. § 1681s–2(b) of the Fair Credit Reporting Act ("FCRA") by failing to conduct a reasonable reinvestigation of the debt in response to Akalwadi's notice that it was reported incorrectly.[10] (Am. Compl.¶ 49.) In general, the FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681b. In its Motion for Summary Judgment, RMA asserts that Akalwadi's FCRA claim fails as a matter of law.

■■■ First, RMA alleges that it is not subject to the FCRA because it is not a credit reporting agency. In support of this contention, RMA cites a number of cases decided before § 1681s–2 was added to the FCRA in a 1996 amendment. *See* Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–

---

**10.** Generally, the statute of limitations under the FCRA is two years from the time the violation occurred. 15 U.S.C. § 1681p; *see also TRW, Inc. v. Andrews,* 534 U.S. 19, 33, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). RMA must have received notice of a dispute sometime after Akalwadi initiated disputes with the credit reporting agency on August 30, 2002 and September 18, 2002, but before September 23, 2002, when Equifax sent a letter to Akalwadi stating that RMA had confirmed the accuracy of the reported collections. Therefore, RMA's alleged failure to comply with its duty to investigate disputed information occurred within two years of the time that Akalwadi filed his Complaint on November 4, 2002.

448–49 (1996). The 1996 amendment imposed responsibilities upon furnishers of information for the first time under the FCRA. *See id.; see also* Michael F. McEneney & Karl F. Kaufmann, *Fair Credit Reporting Act Developments*, 59 Bus. Law. 1215, 1216 (2004). RMA does cite one post–1996 unpublished opinion from the Western District of Virginia that held that a debt collector was not covered by the FCRA because the company was not a consumer reporting agency. *See Foster v. Wheelock*, 2000 WL 1535455 (W.D.Va. Oct.11, 2000). This case, however, does not discuss the application of FCRA § 1681s–2(b).

In an opinion issued this year, the United States Court of Appeals for the Fourth Circuit provided guidance on the persons covered by the FCRA. The Fourth Circuit "recognize[d] that the FCRA applies not only to those that *furnish* and report consumer credit information but also to those that furnish and report certain other types of information regarding consumers." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 n. 1 (4th Cir.2004)[11] (emphasis added). In *Johnson*, the Fourth Circuit affirmed a jury verdict entered against MBNA America Bank ("MBNA"), a creditor, finding that it did not reasonably investigate a disputed MBNA account under § 1681s–2(b)(1) that had been reported to various credit reporting agen-

cies. *See id.* Therefore, under the law of this Circuit, RMA, who furnished information about Akalwadi's collection accounts to a credit reporting agency, is a person covered by the FCRA, more specifically § 1681s–2(b).

Apart from recent Fourth Circuit authority, Akalwadi has also noted considerable nationwide authority in support of the proposition that a debt collector, such as RMA, is covered by the FCRA if it furnishes information to credit reporting agencies.[12] As a matter of public policy and in order to effectuate the purpose of the Act, the FCRA "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Redhead v. Winston & Winston, P.C.*, No. 01–11475, 2002 WL 31106934, at *3 (S.D.N.Y. Sept.20, 2002); *see also Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 501 (W.D.Tenn.1999) (defining the "furnisher of information" in the absence of a statutory definition as an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies."). Section 1681s–2(b) explains the responsibilities of persons who furnish credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by

11. The undersigned District Judge sat on the panel hearing this appeal by designation and joined in the opinion written by Chief Judge Wilkins.

12. *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1058 (9th Cir.2002) (reversing district court and holding that § 1681s–2(b) does create a cause of action for a consumer against a furnisher of credit information); *Scott v. Amex/Centurion S & T*, 2001 WL 1645362, *4 (N.D.Tex. Dec.18, 2001) (*quoting McMillan v. Experian Information Servs. Inc.*, 119 F.Supp.2d 84, 89 (D.Conn. 2000)) ("[T]he plain language of Sections

1681n and Section 1681o when read in conjunction with Section 1681s–2, expressly provides a consumer remedy for violation by a furnisher of credit information of the obligations imposed under 15 U.S.C. §§ 1681s–2(b)."); *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 922 (N.D.Ill.2000); *See Bruce v. First U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135, 1142–3 (E.D.Mo.2000); *Campbell v. Baldwin*, 90 F.Supp.2d 754 (E.D.Tex.2000); *Thomasson v. Bank One, La. N.A.*, 137 F.Supp.2d 721, 723 (E.D.La.2001); *DiMezza v. First USA Bank*, 103 F.Supp.2d 1296, 1299 (D.N.M.2000).

the furnisher. Section 1681–s(b)(1) of the FCRA requires, after notice of a dispute from the consumer reporting agency, that the "person" who provided information to the consumer reporting agency shall conduct an investigation into the disputed debt and report its findings to the appropriate consumer reporting agencies. *See* 15 U.S.C. § 1681s–2(b);[13] *see also* 15 U.S.C. § 1681(b) (A "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.").

■ Second, apart from its argument that it is not subject to the FCRA, RMA asserts that Akalwadi's FCRA claim must fail because § 1681s–2(b) does not provide consumers with a private right of action against debt collection agencies. (Def.'s Mem. Supp. Summ. J. at 6.) RMA relied on explicit language in *Beattie v. Nations Credit Fin. Servs. Corp.*, 65 Fed.Appx. 893 (4th Cir.2003) to support its contention that consumers are not afforded a private right of action under 15 U.S.C. § 1681s–2(b). (Def.'s Mem. Supp. Summ J. Ex. 3.) However, the United States Court of Appeals for the Fourth Circuit granted a rehearing in that case. The subsequent opinion deleted all references to consumers not having a private right of action under this section and held that the consumers in that case could not bring an action under § 1681s–2(b) because they had not first filed their dispute with the credit reporting agency. *See Beattie v. Nations Credit*

*Fin. Servs. Corp.*, No. 02–1744, 2003 U.S.App. 10451, at *16 (4th Cir. June 27, 2003) (per curiam) (stating only that "subsection (b) is not applicable to [these consumers] because this portion of the FCRA imposes a duty on [furnishers] only after receiving notice that the [consumers] filed a dispute with a credit reporting agency, challenging the accuracy of a credit report"). In *Johnson,* the Fourth Circuit implicitly recognized that a consumer may bring a cause of action against a furnisher of credit information under Section 1681s–2(b). *See* 357 F.3d at 428.

There is abundant authority in support of the recognition of a private right of action under § 1681s–2(b). *See Ayers v. Equifax Info. Servs.,* No. 03–551, 2003 WL 23142201, at *5, 2003 U.S. Dist. LEXIS 23271, at *10 (E.D.Va. Dec. 16, 2003) (reasoning that consumers have a private right of action against furnishers of credit information for noncompliance with Section 1681s–2(b)); *DiMezza v. First USA Bank, Inc.,* 103 F.Supp.2d 1296, 1300 (D.N.M. 2000) (stating that "the plain language of the [FCRA] compels the conclusion that there is a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information"); *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 926 (N.D.Ill.2000) (determining that consumers have a private right of action against a furnisher based on the fact that permitting a private remedy furthers the underlying purpose of the FCRA).[14] Accordingly, this Court

---

**13.** Section 1681s–2(b)(1) provides in pertinent part that "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency ...; (C) report the results of the investigation to the consumer reporting

agency; and (D) if the investigation finds that information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information." At the end of 2003 this section was amended to create additional duties on furnishers of information, but this new subparagraph is not relevant to the case at bar.

**14.** *But see Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 501 (W.D.Tenn.1999)

finds that Akalwadi may raise a cause of action against RMA pursuant to Section 1681s–2(b).

▮ RMA next argues that even if consumers have a private cause of action against furnishers of information, Akalwadi's claim must fail because he has not shown that RMA acted negligently,[15] or with malice, or a willful intent.[16] Specifically, RMA argues that Akalwadi failed to allege how its reinvestigation procedures violated the FCRA, instead, merely stating that RMA failed to conduct a reasonable reinvestigation of the debt. RMA asserts that these assertions are insufficient to maintain a claim under FCRA.

▮ Nothing in the language of the FCRA indicates the level of investigation required under § 1681s–2(b)(1). *See Bruce v. First U.S.A. Bank, N.A.*, 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000). In the *Johnson* opinion, the Fourth Circuit recently held that " § 1681s–2(b)(1) requires [furnishers], after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." 357 F.3d at 431. The Fourth Circuit has recognized that a court's examination of § 16181s–2(b)'s investigation requirement for furnishers of credit information is comparable to the analysis used to determine whether a credit reporting agency has conducted a reasonable investigation under the FCRA.[17] *See Johnson*, 357 F.3d at 432. In determining whether a furnisher's investigation is reasonable, the fact-finder should weigh "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." *See Johnson*, 357 F.3d at 432. It is generally a question of fact for the jury as to whether a reasonable investigation was conducted. *Bruce*, 103 F.Supp.2d at 1143 (*citing Cushman*, 115 F.3d at 225; *Henson*, 29 F.3d at 287).

This Court will apply the same reasonableness standard to the investigation requirement in FCRA § 1681s–2(b). *See Johnson*, 357 F.3d at 431. Based on this standard, the Court finds that there are genuine issues of material fact as to whether RMA negligently failed to comply with § 1681s–2(b)(1)(A)'s investigation requirement. RMA maintains that its inves-

---

(holding that a consumer does not have private right of action under § 1681s–2(b)).

**15.** 15 U.S.C. § 1681*o* provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of that failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court."

**16.** 15 U.S.C. § 1681n provides any consumer a cause of action against any person who willfully fails to comply with any requirement imposed under the FCRA and provides for payment of actual damages or statutory damages up to $1,000 as well as such amount of punitive damages as the court may allow.

**17.** 15 U.S.C. § 1681i(a) provides in pertinent part that "[i]f the completeness or accuracy of any item of information contained in a consumer's file at a credit reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate . . . and record the current status of the disputed information, or delete the item from the file. . . ." Most courts interpret § 1681i(a) to impose a duty on credit reporting agencies to conduct a reasonable investigation. *Bruce*, 103 F.Supp.2d at 1143 (*citing Cushman v. Trans Union Corp.*, 115 F.3d 220, 224–25 (3rd Cir. 1997); *Henson v. CSC Credit Services*, 29 F.3d 280, 286–87 (7th Cir.1994); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991); *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986)).

tigation was reasonable because Akalwadi specifically disputed the amount of the debt with Equifax, not the existence of duplicate accounts. In contrast, Akalwadi maintains that a reasonable reinvestigation by RMA would have revealed its errors in reporting duplicate collection accounts, both of which reference the same debt with identical creditor information and DX number. The record .before this Court contains a genuine dispute of material fact concerning whether RMA took reasonable steps to verify the accuracy of Akalwadi's RMA accounts.

■■■■ Akalwadi's claim in Count V alleging that RMA failed to conduct a reasonable investigation as to the disputed debt information also includes an allegation of willful noncompliance and a claim to recover punitive damages. To prevail on a willful noncompliance claim and recover punitive damages, Akalwadi must show that RMA knowingly and intentionally did not investigate the disputed debt in conscious disregard for his rights. *See Bruce*, 103 F.Supp.2d at 1143 (*citing Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Cushman*, 115 F.3d at 226)). For the same reasons as stated with regard to Akalwadi's claim of negligent violation of the FCRA, there are genuine disputes of fact regarding Akalwadi's claim that RMA willfully failed to conduct an investigation of his disputes. This Court cannot say as a matter of law that no reasonable jury could find that RMA willfully failed to investigate Akalwadi's disputes.

In light of genuine issues of material fact concerning whether RMA took reasonable steps to investigate the disputed debts and whether RMA willfully failed to conduct a reasonable investigation, RMA's Motion for Summary Judgment as to Count V is denied.

## C. Maryland Commercial Law

### 1. Count IX

■■■ Akalwadi alleges that RMA violated the Maryland Consumer Debt Collection Act ("MCDCA") by knowingly disclosing false information about his credit worthiness. *See* § 14–202(3) (stating that "disclosing or threatening to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false" is a violation of the MCDCA). Unlike the FDCPA, the MCDCA is not a strict liability statute. Instead, RMA must be found to have disclosed information with actual knowledge or reckless disregard as to the falsity of the information to be liable under § 14–202(3) of the MCDCA. *See Spencer*, 81 F.Supp.2d at 595.

■■■ There is a genuine dispute of material fact concerning whether RMA knowingly or recklessly disclosed false information to a credit bureau. Akalwadi claims that business records show that RMA knew that Akalwadi only owed $2,779.15, but, nonetheless, RMA knowingly reported the false amount of $10,142 to a credit bureau. In contrast, RMA has stated that the double reporting, which resulted in the $10,142 amount being submitted to the credit bureau, was a mistake. Therefore, both RMA's and Akalwadi's Motion for Summary Judgment, as to Count IX, are denied.

### 2. Count X

■■■ In Count X, Akalwadi avers that RMA's automated phone calls violated the MCDCA because they were reasonably calculated to cause abuse and harassment. *See* Md.Code. Ann., Commercial Law § 14–202(6) (establishing that "communicat[ing] with the debtor or a person related to him with frequency at ... unusual hours, or in any other manner as reason-

512

ably can be expected to abuse or harass the debtor" is a violation of the MCDCA). As discussed *supra* in Section A.2.d), the reasonableness of RMA's volume of calls to Akalwadi, as well as the pattern of these calls, is a question of fact for the jury. Therefore, RMA's Motion for Summary Judgment is denied as to Count X.

### CONCLUSION

For the foregoing reasons, RMA's Motion for Summary Judgment is GRANTED as to Count III and DENIED as to all other Counts. Akalwadi's Motion for Partial Summary Judgment is DENIED. The Court will issue a separate Order consistent with this Opinion.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 22nd day of September 2004, HEREBY ORDERED:

D. That the Defendant RMA's Motion for Summary Judgment (Paper No. 26) is GRANTED in part as to Count III and DENIED in part as to all other Counts;

B. That the Plaintiff Akalwadi's Motion for Partial Summary Judgment (Paper No. 27) is DENIED; and

C. That the Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to counsel for both parties.